State, ex rel., Roberts v. Weston.

STATE OF NEBRASKA, EX REL., GEORGE H. ROBERTS v.
JEFFERSON B. WESTON, AUDITOR.

Constitutional Law: SALARY OF OFFICERS.  The constitution fixing the salary of an officer, and providing that "the auditor shall draw warrants of the state quarterly" therefor, "which shall be paid out of any funds not otherwise appropriated," appropriates by law the amount necessary to pay such salary, and no legislative act is necessary.

THIS was an application for a mandamus against the respondent, to compel him to draw his warrant for $166.66, salary alleged to be due the relator on the first of January, 1876, for the months of November and December, 1875, and representing the increased compensation due the relator under the provisions of the constitution taking effect November 1, 1875. The answer of the respondent alleged that by Sec. 22, Art. III, of said constitution, no money could be drawn from the treasury except in pursuance of a specific appropriation made by law; that there had been no session of the legislature, the law-making power, since the adoption of the constitution, and no specific appropriation made to cover said salary.

*George H. Roberts, Attorney General, pro se,* cited *Reynolds, Auditor, v. Taylor,* 43 *Alabama,* 420. *Thomas v. Owens,* 4 *Maryland,* 189.

*Nathan S. Harwood,* for the respondent, cited sections 19 and 22, Art. III, of the Constitution.

LAKE, CH. J.

This case raises the question of the authority of the state auditor to draw warrants upon the state treasurer for the payment of the salaries of the state officers, when

no appropriation therefor has been made by the legislature.

I.  On the part of the relator it is contended that such authority is clearly given by section twenty-five of the schedule of the new constitution, while on the other hand, the auditor insists that it furnishes no authority whatever for him to do so.  This section is as follows:

"Sec. 25.  The auditor shall draw the warrants of the state quarterly for the payment of the salaries of all officers under this constitution, whose compensation is not otherwise provided for, which shall be paid out of any funds not otherwise appropriated."

If this section is given the effect which the language, by its ordinary meaning plainly imports, there would seem to be no doubt that it was intended thereby to dispense with the necessity of a legislative appropriation in all those cases to which it applies, viz: in the payment of the salaries of those officers created by the constitution, and whose salaries it directs to be paid from the state treasury.

It will be observed that all the words here employed are of common use, and therefore are to be taken in their plain and ordinary sense.  The rule is the same in the construction of a constitutional provision, in this respect, as in the construction of an act of the legislature.

It was suggested, however, by the defendant's counsel, that there is a conflict between this section, and the second clause of section twenty-two, article three of the constitution, which provides that, "no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law," and therefore both cannot stand.  But we do not think there is any conflict whatever between them.  The constitution is the "*supreme law*" in the state, emanating directly from the body of the people; and section twenty-five of the

schedule, in plain, simple language, appropriates from the treasury sufficient funds, not otherwise appropriated, to pay the salaries of all officers within its operation, whenever it shall happen that no legislative appropriation exists. This is, therefore, an appropriation "*made by law*," and applicable to a specific object.

This section was undoubtedly framed for the express purpose of meeting, and providing for, the very contingency which now exists, and which may hereafter happen, of various officers being in the employ of the state, with no legislative appropriation authorizing their payment. This must have been the purpose of the convention in framing, and the people in the adoption of this section, otherwise it would be entirely meaningless. If the clause of section twenty-two, before referred to, had limited the appropriation which it requires, to an act of the legislature, there might be some force in the objection urged. But, it only requires a specific appropriation "*made by law*," and we are clearly of the opinion, that this may be accomplished just as effectually by the constitution as by legislative enactment.

Again, section twenty-five, of the schedule, not only requires the payment to be made, but, it also directs that it should be done quarterly, which renders it just as specific, in all essential particulars, as it was possible to make it.

In the case of *Reynolds, Auditor, v. Taylor*, 43 *Alabama*, 420, it was held, that if the salary of a public officer is fixed, and the times of payment prescribed by law, no special annual appropriation is necessary to authorize the auditor to draw his warrant for its payment. But the case of *Thomas, Comptroller, v. Owens*, 4 *Maryland*, 189, seems to be more directly in point. It was there held, that when the constitution declared the amount to be paid an officer, that it was an appropriation made *by law*, and no legislative act was necessary.

State, ex rel., Roberts v. Weston.

II.   Is the relator within the operation of this section of the schedule, and does he show himself to be entitled to the benefit of its provisions?

He is holding the office of attorney general of the state, which, at the time of his election, and until the taking effect of the new constitution, was a purely statutory office, depending for its existence, and continuation, upon the will or caprice of the legislature.   But, on the first day of November it became a constitutional office, and the tenure of the incumbent, as well as his compensation, were made independent of, and placed beyond the reach of the legislature, and now rest on the solid foundation, and are under the protection, of the paramount law.   Up to the time the change was made, his salary was $1,000.00 per annum.   By section twenty-four, article five, of our present constitution, the salary of the attorney general is fixed at $2,000.00 per annum; and by section twenty-three of the schedule, the relator was continued in, and now holds his office.

The legislative appropriation of the twenty-third of February last, sets apart only the sum of $1,000.00 per annum from which to pay the relator's salary, thereby leaving a deficiency of $250.00 per quarter, since the first day of November, in meeting this increased compensation, if we look alone to this source of payment; this deficiency amounting, at the close of the last quarter, to $166.66, he is entitled to have made up to him, as provided in section twenty-five of said schedule, by a warrant in due form, drawn by the defendant on the state treasurer, and to be paid out of any funds not otherwise appropriated; in other words, out of the general fund.

The peremptory writ is therefore awarded as prayed, to carry this judgment into effect.

JUDGMENT ACCORDINGLY.

ALL of the Judges concurred.