[No. 32877. Department Two. January 7, 1955.]

THE STATE OF WASHINGTON, *on the Relation of Everett Fire Fighters, Local No. 350, et al., Appellants,* v. C. ARVID JOHNSON *et al., Respondents.*[1]

[1]Reported in 278 P. (2d) 662.

*Dailey & Conroy,* for appellants.

*Leslie R. Cooper,* for respondents.

*Woll, Glenn & Thatcher* and *John Spiller, amici curiae.*

SCHWELLENBACH, J.—At a municipal election held in the city of Everett (a city of the first class) in March, 1952, the voters passed an initiative which amended the city charter so as to provide for the submission of disputes arising between the firemen and the city as to working conditions, wages, and pensions, to a board of arbitrators. As amended, the charter provides that, in the event the city commissioners and the firemen cannot agree on wages, pensions, or working conditions, the firemen shall appoint one arbitrator, the city commissioners one, and the two a third arbitrator, who shall be chairman of the board. The arbitration board is then given full power to fix wages, pensions, or working conditions of city firemen, and its decisions are binding upon the council and the firemen. No standards are prescribed to direct the board in its determinations.

In 1953, the firemen sought to bargain collectively in the matter of salaries. No agreement was reached, and the firemen then notified the city commissioners that they had appointed an arbitrator. The commissioners refused to appoint an arbitrator, and this action was commenced seeking to obtain a writ of mandate. A demurrer to the petition was sustained upon the grounds that the initiative charter amendment was unconstitutional as being an unlawful delegation of legislative authority, as contravening RCW 41.16 relating to firemen's pensions in municipalities, and as contravening RCW 35.33 relating to budgets in first-class cities. The petitioners elected to stand upon their petition, and the action was dismissed. This appeal follows.

The record shows that a demurrer to a former petition had been sustained and that the petitioners thereafter filed an amended petition, which is the subject of this action. The record also shows that the cash bond on appeal in the

sum of two hundred dollars was filed with the clerk October 15, 1953, while the amended petition was filed January 26, 1954. The notice of appeal was given February 17, 1954, This raises a question of whether or not this court obtained jurisdiction of the appeal.

Rule on Appeal 22, 34A Wn. (2d) 25, as amended, effective January 2, 1951, provides:

"An appeal in a civil action or proceeding shall become ineffectual for any purpose unless at or before the time when the notice of appeal is given or served, or within ten days thereafter, an appeal bond to the adverse party conditioned for the payment of costs and damages as prescribed in Rule 25 be filed with the clerk of the superior court, or money in the sum of two hundred dollars be deposited with the clerk in lieu thereof; . . ."

It will be noticed that an appeal bond may be served and filed before the notice of appeal is given. In *Salter v. Heiser*, 43 Wn. (2d) 198, 260 P. (2d) 882, the appellants, on November 5, 1952, gave notice of a cash deposit in lieu of bond. However, the record showed that the cash bond had been given on a prior cross-appeal to this court in 1951. We held that the cash on deposit could not stand as a bond on the appeal in question. We said:

"There is no showing that the funds on deposit (or any part thereof) have ever been made subject to the conditions of an appeal bond in the instant case. There is nothing to prevent appellants from demanding and receiving the cash now on deposit from the clerk of the superior court."

In the instant case, instead of refusing to plead further upon the sustaining of the demurrer to the first petition, petitioners filed an amended petition. It was all done in the same case. No order was issued on the first petition on which an appeal could be taken. Appellants could not, without dismissing the present appeal, demand and receive the two hundred dollars now on deposit in lieu of a cash bond. See Rule on Appeal 19, 34A Wn. (2d) 24. We are satisfied that this court has jurisdiction of the appeal.

We now come to the question of whether or not the enactment of the charter amendment under consideration con-

stituted an unlawful delegation of legislative authority. Rhyne, Labor Unions and Municipal Employe Law 43, Arbitration 3, states:

"Contract clauses, requiring the arbitration of disputes or grievances between the municipality and the union by 'neutral and impartial persons' and agreeing that the results will be binding, have been held invalid on two grounds: (1) that city officers may not bargain away or delegate to others the exercise of authority or discretion confided in themselves by law; (2) that since disputes may concern the hiring or discharge of employees, which matters may be governed by the merit system or civil service laws, city officers may not consent to any other method of dealing with such matters in the absence of statutory authority."

*City of Springfield v. Clouse*, 356 Mo. 1239, 206 S. W. (2d) 539, was a declaratory judgment action seeking determination of the legal power of the city to make collective bargaining contracts with labor unions representing city employees concerning wages, hours, collection of union dues, and working conditions. In holding such contracts invalid, the court said:

"Under our form of government, public office or employment never has been and cannot become a matter of bargaining and contract. [Citing cases.] This is true because the whole matter of qualifications, tenure, compensation and working conditions for any public service, involves the exercise of legislative powers. Except to the extent that all the people have themselves settled any of these matters by writing them into the Constitution, they must be determined by their chosen representatives who constitute the legislative body. It is a familiar principle of constitutional law that the legislature cannot delegate its legislative powers and any attempted delegation thereof is void. [11 Am. Jur. 921, Sec. 214; 16 C. J. S. 337, Sec. 133; *A. L. A. Schechter Poultry Corp. v. U. S.*, 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570.] If such powers cannot be delegated, they surely cannot be bargained or contracted away; and certainly not by any administrative or executive officers who cannot have any legislative powers. Although executive and administrative officers may be vested with a certain amount of discretion and may be authorized to act or make regulations in accordance with certain fixed standards, nevertheless the matter of making such standards involves the exercise of legis-

lative powers. Thus qualifications, tenure, compensation and working conditions of public officers and employees are wholly matters of law-making and cannot be the subject of bargaining or contract."

In *Mugford v. Mayor & City Council of Baltimore*, 185 Md. 266, 44 A. (2d) 745, 162 A. L. R. 1101, the mayor and city council had entered into an agreement with certain unions relative to hours, wages, and working conditions of city employees belonging to the unions. In holding the agreement invalid, the court said:

"To the extent that these matters are covered by the provisions of the City Charter, creating a budgetary system and a civil service, those provisions of law are controlling. To the extent that they are left to the discretion of any City department or agency, the City authorities cannot delegate or abdicate their continuing discretion. Any exercise of such discretion by the establishment of hours, wages or working conditions is at all times subject to change or revocation in the exercise of the same discretion. But it by no means follows that employees may not designate a representative or spokesman to present grievances. . . .

"The City has no right under the law to delegate its governing power to any agency. The power of the City is prescribed in its charter, and the City Charter constitutes the measure of power that is possessed by any of its officials. To delegate such power to an independent agency would be a serious violation of the law. To recognize such delegation of power in any City department might lead to the delegation of such power in all departments, and would result in the City government being administered regardless of its charter."

Appellants contend that here the city council is not acting, but that the people themselves have acted in that they have amended their charter, which they were authorized to do under the "Home Rule" provision of Art. XI, § 10, of the state constitution, which provides:

". . . Any city containing a population of twenty thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, . . ."

We have held that under the above section a city may amend its charter to provide for a commission form of gov-

ernment, vesting all legislative and executive power in five commissioners, who shall constitute the council, *Walker v. Spokane,* 62 Wash. 312, 113 Pac. 775; frame a charter adopting the initiative and referendum, *Hartig v. Seattle,* 53 Wash. 432, 102 Pac. 408; amend the charter to require submission of the matter of granting franchises to a vote of the people, *Hindman v. Boyd,* 42 Wash. 17, 84 Pac. 609; amend charter to provide for civil service qualifications for city employees, giving preference to veterans, *State ex rel. Raines v. Seattle,* 134 Wash. 360, 235 Pac. 968; provide by charter that no officer, including councilman, can hold any òther office, Federal, state, county, or municipal, although by state statute the only qualifications for holding elective office are that he be a citizen of the United States and of the state of Washington and an elector of the political subdivision involved, *State ex rel. Griffiths v. Superior Court,* 177 Wash. 619, 33 P. (2d) 94; enact charter provision for pension system for its employees, *Ayers v. Tacoma,* 6 Wn. (2d) 545, 108 P. (2d) 348.

■ It should be noted, however, that the charter provision itself must be "consistent with and subject to the constitution and laws of this state." That has been the test in each case coming before us wherein we were required to pass upon the validity of the particular charter provision in question. Although the people in first-class cities are granted the right to set up a charter to rule themselves under Art. XI, § 10, of the constitution, *that charter* cannot run counter to the constitution or laws of the state which gave them the right to enact it. In *State ex rel. Griffiths v. Superior Court, supra,* we said:

"The only attack made by the relator upon the charter is that it purports to superadd certain qualifications necessary for elective officers to those imposed by the legislature. Assuming, for the sake of argument, that the language of the charter is to be interpreted as, in fact, imposing superadded qualifications, it does not follow that it contravenes the statute. Had the framers of the charter sought to lessen the requirements demanded by the statute, a different question would be presented, for then the charter would be in direct conflict with the statute."

We held in the early case of *Tacoma v. State*, 4 Wash. 64, 29 Pac. 847, that the power provided by a freeholders' charter to condemn private property ·for use as a public street was inoperative in the absence of an act of the legislature conferring the right of eminent domain and prescribing the method by which it should be exercised. In *State ex rel. Snell v. Warner*, 4 Wash. 773, 31 Pac. 25, we held that no authority is given to a city by Art. XI, § 10, to extend its boundaries by amendment to its charter.

It has many times been held that ·charter provisions of a city may be superseded by general laws of the legislature. "Home Rule," its powers and its limitations, is well explained in *State ex rel. Raines v. Seattle, supra*:

"This charter amendment was adopted by the people of Seattle and is a sort of local ·constitution of their own, subject, of course, to its being consistent with the ·constitution and laws of the state. Clearly, under that provision of § 10, of art. XI, of the constitution, the state delegated to cities such as Seattle plenary power to adopt a local constitution or charter for its local government. It remains only to determine, therefore, whether or not such legislation as was incorporated in the charter amendments in question was such as the city itself could enact through its legislature. The city, of ·course, cannot pass an unconstitutional law for its local government any more than the state can."

Section 6 of "AN ACT to provide for the government of cities having a population of twenty thousand or more inhabitants," Session Laws of 1890, p. 223, [*cf*. RCW 35.22.200] provides:

"The legislative powers of any city organized under the provisions of this act shall be vested in a mayor and a city. council, to consist of such number of members and to have such powers as may be provided for in its charter, . . ."

■■ We have held that the fixing of wages of municipal employees is a legislative function. *State ex rel. Pike v. Bellingham*, 183 Wash. 439, 48 P. (2d) 602; *State ex rel. Payne v. Spokane*, 17 Wn. (2d) 22, 134 P. (2d) 950. The rule against delegation of legislative authority is applicable whether the law is enacted by the legislature or by initiative. *Senior Citizens League v. Department of Social Se-*

*curity,* 38 Wn. (2d) 142, 228 P. (2d) 478; *Hernandez v. Frohmiller,* 68 Ariz. 242, 204 P. (2d) 854.

The city of Everett, under its police power, maintains and operates a fire department for the protection of its citizens. It erects fire stations, purchases equipment, and employs men trained in the skill of fire fighting. If the firemen have any complaint regarding working conditions, wages, or pensions, they take the matter up with the council, the legislative body of the city. The council is limited in its expenditures by the city budget. It must consider the ability of the citizens, through taxation, to pay increased wages. At the same time, it may be confronted with the possibility that if it does not grant an increase in wages, some or all of the firemen might quit, with the result that the citizens might be left with inadequate fire protection. The concern of the legislative body is the welfare and protection of the people of the city. A problem such as this requires the exercise of discretion.

■ Can the legislative body abdicate its responsibility and turn it over to a board of arbitrators whose decision will be binding upon the legislative body and the firemen? Clearly it has no legal right to do so. The theory of delegation of authority is that the person or group, to whom authority has been delegated, acts for and as the agent of the person or group delegating such authority. That is not the situation here. Here the council would be stepping out of the picture entirely, and the arbitration board would be performing a function which, by law, is the responsibility of the council.

If the council had no legal right to so abdicate its responsibility in this matter, the people of Everett had no right, under Art. XI, § 10, of the state constitution, to require the council to do so. The charter amendment complained of contravenes and makes ineffective the state legislative act vesting the legislative powers, together with corresponding responsibilities, in the city council.

The judgment of dismissal is affirmed.

GRADY, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.