**STATE of Missouri ex rel. ST. LOUIS FIRE FIGHTERS ASSOCIATION LOCAL NO. 73, AFL–CIO, an Unincorporated Association, et al., Respondents,**

**v.**

**George STEMMLER et al. (Respondents in Mandamus), Appellants,**

**R. Elliott Scearce (Respondent in Mandamus),**

**and**

**The City of St. Louis (Defendant), Appellant.**

**No. 57072.**

Supreme Court of Missouri, En Banc.

April 10, 1972.

Motions for Rehearing and Clarification Denied May 8, 1972.

Bartley, Goffstein, Marshall & Bollato, William H. Bartley, John H. Goffstein, Clayton, for respondents.

Thompson, Walther, Shewmaker & Gaebe, Richard D. Shewmaker, St. Louis, for appellants Stemmler, Cummings and Gould and the City of St. Louis.

Aaron A. Wilson, City Counselor, Salmon B. Mumma, Associate City Counselor, amicus curiae.

FINCH, Chief Justice.

This case, written on recent reassignment, involves the question of whether a home rule charter amendment providing that salaries for St. Louis firemen shall be not less than those of corresponding ranks of St. Louis police officers (whose pay is fixed by the Missouri General Assembly) is constitutional. We hold that it is.

St. Louis is a constitutional charter city operating pursuant to Art. VI, §§ 31, 32(a) and 32(b), of the Constitution of Missouri.[1] Those provisions authorize the city to amend or revise its charter, subject only to the requirement that such charter be in harmony with and subject to the Constitution of Missouri and its laws in matters of general interest and statewide concern. Subject to such limitations, the home rule charter is the city's organic law —its constitution. Sanders v. City of St. Louis, Mo., 303 S.W.2d 925.

Art. I, § 1(20), of the St. Louis Charter authorizes the city "To provide and maintain a fire department," and Art. XVIII, § 4(a) thereof provides that the board of aldermen shall adopt a plan of compensation fixing rates of pay for all employees in the classified service (including firemen) on recommendation of the civil service commission.

At an election held on September 15, 1970, the voters of St. Louis approved an amendment to Art. XVIII which added a new § 31 thereto. That new section provided that, notwithstanding any other provisions of the charter or ordinances, the salaries of designated ranks and positions of employees of the Fire Department "shall from and after the effective date of this section and thereafter not be less than the salaries provided by law for the said equivalent and corresponding ranks and positions of officials of the police force of the City of St. Louis." The amendment set forth a table specifying what were corresponding ranks in the two departments.

1. All constitutional references are to Constitution of Missouri, 1945, V.A.M.S.

After voter approval of the above charter amendment, the civil service commission held a meeting concerning a proposed compensation ordinance for firemen. In spite of the newly adopted § 31 of Art. XVIII, the commission recommended an ordinance containing salary levels for firemen which in some instances were lower (and in others higher) than those for corresponding police positions as listed in the charter amendment. The board of aldermen adopted this recommended ordinance, effective November 1, 1970.

Thereupon the relators herein sought mandamus (Count I) and declaratory judgment relief (Count II) in this proceeding. They sought to act individually and as representatives of a class under Rule 52.08, V.A.M.R. The trial court granted summary judgment in favor of relators, holding the charter amendment to be valid and directing by writ of mandamus that the civil service commission recommend an ordinance whereby firemen would receive not less than the salaries of corresponding ranks of the police force. Both the city and the members of the civil service commission have appealed.

The first contention by appellants is that since salaries of police officers of the City of St. Louis are fixed by the general assembly of Missouri,[2] the charter amendment results in the general assembly, rather than the board of aldermen, fixing the compensation of the city's firemen. This, they say, constitutes an unconstitutional attempted delegation by the city of its legislative responsibility to fix the compensation of its firemen.

Appellants in their brief cite numerous cases which announce the general proposition that a legislative body may not abdicate or delegate its legislative power. However, that rule is not pertinent because we are not reviewing the validity of the action of a legislative body. Instead, we are dealing with the constitutionality of an amendment to the city charter and must decide the question of whether the *people* of St. Louis had the right to adopt that amendment and thereby provide in their charter (their fundamental law) that certain minimums should be observed thereafter in the fixing of compensation of their city firemen.

■ A consideration of this question necessitates a recognition of the basic fact that the people themselves are the source of all governmental power. Their will is supreme. They spell out in their constitution what form their government shall take and what powers it shall have.[3] Hence, when the people of the State of Missouri write or amend their constitution, they may insert therein any provision they desire, subject only to the limitation that it must not violate restrictions which the people have imposed on themselves and on the states by provisions which they have written into the federal constitution.[4]

■ When we turn to the question of what may be provided in the St. Louis home rule charter, we find that the people of Missouri, by provisions written into the state constitution (Art. VI, §§ 31, 32(a) and 32(b)), have said that the people of St. Louis may write their own charter for their city government. The only restrictions stated in this constitutional grant of power are that such charter is subject to the Missouri constitution and to state laws of general interest and statewide concern.

2. The salaries of police officers of the City of St. Louis are determined by the State of Missouri by action of the general assembly. Chap. 84, V.A.M.S., particularly § 84.160; State ex rel. Hawes v. Mason, 153 Mo. 23, 54 S.W. 524; State ex rel. Priest v. Gunn, Mo., 326 S.W.2d 314.

3. This fact is recognized in Art. I, § 1, of the Constitution of Missouri, which provides as follows: "That all political power is vested in and derived from the people; that all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole."

4. Art. I, § 3, Constitution of Missouri.

Of course, although not expressed in the Missouri constitution, it is implicit that the city charter, like the state constitution, may not violate restrictions imposed by the federal constitution. Subject only to the foregoing limitations, the people of Missouri, by Art. VI, §§ 31, 32(a) and 32(b), have granted to the people of St. Louis the power to write and to amend their own charter and to provide therein the kind of city government which they want.

We know of no state constitutional provision or any state law of general interest or statewide concern which says that a Missouri constitutional home rule charter city must leave the matter of compensation of city officials or employees entirely to its legislative body (board of aldermen or council), or that such city cannot have a charter provision either expressly fixing the amount of pay of such persons or, in the alternative, imposing limitations in the form of guidelines which the legislative body must follow in fixing such pay. As a matter of fact, this court in Kirby et al. v. Nolte, 351 Mo. 525, 173 S.W.2d 391, expressly recognized that St. Louis could write into its city charter provisions which limited its board of aldermen in their function of fixing compensation for city employees. The people of St. Louis had adopted an amendment to their city charter establishing a civil service commission which was to prepare a classification and compensation plan providing rates of pay for all city employees in the classified service. That charter amendment provided that when such a plan was drafted by the commission and submitted to the board of aldermen, the plan was to be adopted by ordinance. Pursuant to that charter provision, the commission prepared and submitted a plan, but the board of aldermen passed an ordinance which established salaries which differed from those specified in the proposed civil service plan.

In the litigation which followed, this court held that the language of the charter amendment was mandatory, and that the board of aldermen could either accept or reject the recommendation of the commission, but could not change it. In so holding, the court said, 173 S.W.2d l.c. 392: "Granting that the fixing of a fundamental wage policy and rates of pay for various positions is ordinarily a legislative function, still the *people of St. Louis, through an amendment to the charter, may properly impose a limitation on the legislative power to permit the fixing of such rates only on the recommendation of the commission.*" (Emphasis supplied.) Subsequently, the opinion recognized specifically that the legislative power of the board of aldermen is subject to limitations imposed in the charter and that the effect of the civil service commission amendment was that the aldermen could not fix salaries without the recommendation of the civil service commission and they could not change those recommendations. This, the court said, 173 S.W. l.c. 393, "does not violate Article III of the Constitution, which divides the powers of government into the legislative, executive and judicial departments."[5]

This same recognition of the power of the people themselves to write constitutional provisions with respect to compensating employees and the basis thereof appears in the language used by this court in two other cases. In State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S.W.2d 532, the relator sought by mandamus to compel the city to pay money claimed to be due for salary as a member of the fire department. Under the Kansas City charter the city council was to fix salaries and the relator sought to recover his salary as fixed by the city council. The city defended on the basis of an agreement between the city manager and the fire department em-

---

5. In State ex inf. McKittrick ex rel. Ham v. Kirby, 349 Mo. 988, 1006, 163 S.W.2d 990, 996, the court said: "It is to be doubted, however, whether the restrictions of Article 3 have any application to mu-nicipal governments." Subsequently, the court held that even if applicable, the civil service commission amendment to the St. Louis charter did not violate the doctrine.

ployees for deductions from their pay. The fireman was permitted to recover because under the charter his compensation was a legislative matter. However, even though the case did not involve a charter provision limiting the legislative power to fix rates of pay, Judge Hyde, in discussing who should determine such matters, said, 137 S.W.2d l.c. 536: "Public offices and positions belong to the people and not to officers upon whom they confer appointive power. 22 R.C.L. 377–379, secs. 9–11. The qualifications, tenure, and compensation thereof must be determined by the people or the people will lose control of their government. *This must be done by the representatives the people have authorized to act for them, unless the people themselves have determined these matters by writing them into the Constitution. If the people have not thus themselves determined them, then under our Constitution and theory of government, these are legislative powers.* Merchants' Exchange of St. Louis v. Knott, 212 Mo. 616, 111 S.W. 565; Throop's Public Officers, secs. 19 and 443–444." (Emphasis supplied.)

In City of Springfield v. Clouse, 356 Mo. 1239, 1251, 206 S.W.2d 539, 545, appears this language: "This is true because the whole matter of qualifications, tenure, *compensation* and working conditions for any public service, *involves the exercise of legislative powers. Except to the extent that all the people have themselves settled any of these matters by writing them into the Constitution,* they must be determined by their chosen representatives who constitute the legislative body. It is a familiar principle of constitutional law that the legislature cannot delegate its legislative powers and any attempted delegation thereof is void." (Emphasis supplied.)

We find no Missouri case which we consider to be in conflict with the philosophy that the people themselves may write into their basic law such provisions or restrictions with respect to the fixing of compensation of officials and employees as they desire to adopt. Appellants cite and rely on various cases from other states, many of which relate to legislative action rather than constitutional change, and hence do not govern this situation. One case cited which does involve amendment of a city charter is the case of State ex rel. Everett Fire Fighters Local No. 350 v. Johnson, 46 Wash.2d 114, 278 P.2d 662. It involved a charter amendment whereby it was provided that if the City of Everett and its firemen were unable to agree on wages, pensions and working conditions, those questions would be submitted to compulsory arbitration. No standards or guidelines of any kind were established. The Supreme Court of Washington held this provision unconstitutional. The court referred to a statute of the legislature placing legislative powers of certain cities in the mayor and city council and held it applicable to the City of Everett even though that city was operating under its own charter. The court held that the fixing of wages of municipal employees was a legislative function, and in view of the statute neither the council nor the people had the right to confer the right on someone else. That distinguishes the Everett case from the situation here where we find no applicable state statute of general interest or statewide concern.

Applying the principle that the people themselves may determine compensation of those serving them in government by constitutional provision, it seems clear that the people of Missouri could amend our state constitution to provide that the salary of the governor shall be a fixed sum of say $50,000 per year. Determination of the governor's salary then would cease to be a legislative question. It also is clear that the people could write into our constitution that the governor shall receive the same salary as the President of the United States, or perhaps half of that salary, or such other percentage thereof as the people might elect to write into the constitution. By the same token, the people of St. Louis could write into their charter that the mayor of St. Louis shall receive a specified salary named in the charter, or that he

shall receive the same salary as the governor of the state. There could be various reasons, such as pride or a desire to make the office particularly attractive, which would dictate such decisions. · None of these hypothetical provisions, when written into the constitution by action of the people, would be a delegation or abdication of legislative authority. They would be part of the state's or city's basic law written into their constitution or charter by action of the people themselves. As the Supreme Court of Nebraska said in State ex rel. Roberts v. Weston, 4 Neb. 216, 219, in a case involving payment to the attorney general under a constitutional provision which established his office and provided the amount of his salary, "But, on the first day of November it became a constitutional office, and the tenure of the incumbent, as well as his compensation, were made independent of, and placed beyond the reach of the legislature, and now rest on the solid fundation, and are ·under the protection,. of the paramount law."

It necessarily follows that the people of St. Louis validly could do what they did when they amended their charter with respect to the fixing of compensation for their city firemen. The Kirby case settles · the question. Under the charter as amended September 15, 1970, the civil service commission will follow exactly the same . procedure which this court considered and approved in Kirby, except that the people by the September 15, 1970, amendment have established a minimum below which the firemen may not be paid. Subject to that limitation, the civil service commission may propose whatever rates they conclude · are appropriate and the recommendation then goes, as in Kirby, to the aldermen for enactment or rejection.

■ We hold that the charter amendment adopted September 15, 1970, is not invalid as an improper delegation of legislative responsibility, and that it does not violate any constitutional requirement relative to separation of powers.

Nor can it validly be said, as contended by respondents, that the charter provision specifying police rates as minimum for firemen means that the city has delegated to the general assembly the job of fixing the salaries of firemen, in violation of Art. VI, § 22, of the Constitution of Missouri. That section, which says that "No law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous constitution, and all such offices or employments heretofore created shall cease at the end of the terms of any present incumbents," is a limitation on affirmative action by the general assembly. In this instance, the general assembly has not undertaken to do any of these things. It has not sought to require that firemen be hired, or to provide their duties, or fix their compensation. The general assembly has done nothing to violate Art. VI, § 22. Instead, the people of St. Louis, by charter amendment, have determined that they want their firemen as well paid as policemen in the city.

The fact that, under our rather unusual setup here in Missouri, the pay of St. Louis policemen is fixed by the general assembly instead of by the St. Louis civil service commission and board of aldermen, does not mean that when the people of St. Louis provide that they want equal pay for these two classes of employees, the general assembly is imposing its will on the city with respect to the pay of firemen. The people of St. Louis voluntarily have amended their charter and established this standard, and it is the determination by the people of St. Louis, not the general assembly, that results in firemen being paid not less than the salaries for policemen.

The people of St. Louis, of course, could change this at any time by further amendment of their charter. As this Court sagely observed in Kirby, 173 S.W.2d l.c. 393: "So long as the people may change their charter of government by their own will, subject only to restrictions self-imposed

under a constitution, it does not appear to us that their political liberty merits the apprehension expressed."

We rule that this charter provision does not violate Article VI, § 22, of the Missouri Constitution.

We next reach appellants' contention that the charter amendment, if valid, was not self-enforcing and that firemen could not be entitled to increased pay thereunder until such time as the board of aldermen so provided by ordinance pursuant to recommendation by the civil service commission.

■■ It is well established that constitutional provisions may be self-executing. State ex rel. Emerson v. Mound City, 335 Mo. 702, 73 S.W.2d 1017; Kitchin v. Wood, 154 N.C. 565, 70 S.E. 995. Generally, constitutional provisions fixing or limiting the amount of compensation to be paid to officers are self-executing. State v. Weston, 4 Neb. 216; City of Louisville v. German, 286 Ky. 477, 150 S.W.2d 931; 16 C.J.S. Constitutional Law § 54(e), p. 162.

■ We conclude that this charter provision, insofar as it prescribes minimum compensation, is self-enforcing. The charter amendment specifically states that, if adopted, it shall become a part of the charter on the day of the election, and in the body of the amendment provides further that "salaries  *  *  *  shall from and after the effective date of this section and thereafter not be less than the salaries *  *  *  of the police force  *  *  *." This is clear mandatory language which states unequivocally that from and after September 15, 1970, salaries of firemen shall be not less than salaries of corresponding ranks of the police department.

If, as appellants contend, the charter amendment is construed to mean that the salaries must be not less than police officers, when and if the civil service commission recommends and the board of aldermen by ordinance so provides, then it is not effective September 15, 1970, as it states, but instead is postponed, perhaps indefinitely. Already, something over a year and a half has passed and there still is no ordinance implementing the charter amendment. In our judgment, this is not what the amendment says or means or what the people contemplated.

It is true that the language of the amendment indicates that the commission may recommend and the aldermen provide for salaries which exceed those of policemen, and hence it contemplates that ordinances may and no doubt will be adopted. However, as to the prescribed minimum compensation, neither the commission nor the aldermen are permitted any discretion. The minimums are mandatory and immediate, and consequently we hold that that portion of the charter amendment is self-enforcing.

Finally, respondents say that Count II, which seeks a declaratory judgment, may not be maintained as a class action because the judgment or decree will not be binding on all members of the class. They cite Rule 52.09(d), which states that "No class suit shall be maintained under Rule 52.08 unless the judgment or decree will be binding upon all members of the class." It is clear and unquestioned that relators seek to maintain Count II as a class action pursuant to Rule 52.08(a) (3), which says that if persons constituting a class are very numerous or it is impractical to bring all of them before the court, one or more persons who will fairly insure adequate representation of all may sue or be sued on behalf of all, "when the character of the right sought to be enforced for or against the class is several, and there is a common question of law or fact affecting the several rights and a common relief is sought." This is what has been referred to as the "spurious" class suit. 1 Carr, Missouri Civil Procedure, § 68, p. 170; Crawford, Class Actions Under the Missouri Code, 18 K.C.L.Rev. 103, 113; 3B Moore's Federal Practice, § 23.10, p. 23–2601.

Clearly, the persons constituting the class sought to be represented in this case,

approximately 1100 firemen, are very numerous and it is impractical to bring all of them before the court. They have a common question of law, namely, the validity of the charter amendment and an interpretation of its language to determine when it is effective and whether it is self-executing. Common relief is sought in that the firemen seek a holding that the charter is constitutional and became effective September 15, 1970. The officers of the union would fairly represent all the members of the group. Nevertheless, question is raised as to whether, in spite of the above facts, Rule 52.09(d) prohibits a class action on the theory that the court's judgment would not be binding on those persons not parties to the suit.

Relators insist that Count II may be maintained as a class action, citing particularly State ex rel. Allai v. Thatch, 361 Mo. 190, 234 S.W.2d 1, plus the sentence in Rule 52.08(a) (3) which says, "Nothing in this Rule shall be construed to affect the rights or liabilities of labor unions to sue or be sued."

In Thatch a mining company constructed its mining works and was ready to commence operations, but Allai and his union associates blocked the public road leading to the mining works by parking cars thereon and by massing people and challenging and intimidating nonunion workers from entering the plant. The company sought an injunction. The circuit court issued a temporary restraining order and when a motion to dismiss it was overruled, Allai and associates sought prohibition. This court's opinion recognized that the case involved a "spurious" class action under what is now Rule 52.08(a) (3), but concluded that a decision in the underlying injunction suit would be binding on all named defendants and all members of the union similarly situated. As a result, it held that § 52.09(d) did not bar the class action.

■ Thatch involved concerted action by the union and its members to prevent operation by the company. The court concluded that a decision in a class action as to the propriety of those concerted efforts would be binding on all members of the union. Here, we do not deal with the validity of concerted actions by members of the union. Rather, we pass upon the constitutionality of a charter amendment. We cannot say that firemen not parties to the suit would be bound by our decision as members of a class. If they are bound, it is on the basis of *stare decisis* or on the basis of the doctrine of virtual representation. Seibert v. City of Columbia, Mo., 461 S.W.2d 808.

Nor does the sentence in § 52.08(a) (3) that nothing in the rule is to be construed so as to affect the rights and liabilities of the union to sue or be sued give relators herein a right to maintain this suit as a class action. In Thatch the section of the statute which was the predecessor of Rule 52.08 was construed as simply meaning that the adoption of the statute did not change the rights of the unions so far as suing or being sued as they existed before the statute was enacted. In so holding, the court said, 234 S.W.2d l. c. 8:

"It seems to us a decision in the underlying injunction suit would be binding on all the named defendants and all members of the named Unions similarly situated and interested. It is true that our Rule 3.07(d) provides no class suit shall be maintained under Code Sec. 19(a) 'unless the judgment or decree will be binding upon *all members* of the class' (italics ours). And it is also true that the second sentence of that Code subsection provides, 'Nothing in this section shall be construed to *affect* the rights or liabilities of labor unions to sue or be sued.' (Italics ours) But the word 'affect' often means, as we think it does here, to produce an effect or *change* upon. 'Affect', 2 Words & Phrases, Perm.Ed., p. 635; National Labor Relations Board v. Suburban Lumber Co., 3 Cir., 121 F.2d 829, 832(2), certiorari denied 314 U.S. 693, 62 S.Ct. 634, 86 L.Ed. 555."

Relators brought Count II for declaratory judgment in their individual capacities as well as an attempted class action. Individually, they seek a construction of the charter amendment and the ordinance passed thereunder, and they do state a claim under Rule 87 for declaratory relief. It, therefore, was proper for the trial court to construe the charter amendment and to hold it valid, even though the suit was not maintainable as a class action. In their agreed statement of facts, all parties expressed the hope that in deciding the case, the constitutionality and validity of the charter amendment would be settled. That has been accomplished.

In conclusion, we hold that the charter amendment of September 15, 1970, is constitutional and valid and that the portion thereof providing that from and after that date firemen shall be paid not less than policemen of corresponding ranks is self-executing. In view of this conclusion, a writ of mandamus directing the civil service commission to recommend an ordinance specifying minimum compensation in accordance with the charter amendment is not necessary. However, we recognize that the commission may recommend and the aldermen may provide for compensation in some instances which is higher than that fixed for corresponding ranks of the police force. In view of that situation, no doubt they can and will recommend an ordinance which will be in conformity with what we have held the charter to require.

The judgment is reversed and remanded with directions to the trial court to enter a judgment in accordance with the views herein expressed.

DONNELLY, MORGAN and HENLEY, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

HOLMAN and BARDGETT, JJ., dissent and concur in separate dissenting opinion of SEILER, J.

SEILER, Justice (dissenting).

I respectfully dissent, because I do not believe the people of St. Louis can constitutionally turn over to a foreign body the fixing of minimum salaries for its firemen.[1]

The majority opinion relies principally on Kirby v. Nolte, banc, 351 Mo. 525, 173 S.W.2d 391, saying it settles the question. This overlooks the marked differences between the situation in Kirby and the present case. In Kirby, the limitation imposed on the board of aldermen as to salaries for city employees was in the form of a *recommendation* from a *local* civil service commission, not an unalterable minimum set by an outside body over which the citizens of St. Louis had no control. In my opinion, the language of the Kirby case quoted on page 459 of the majority opinion cannot properly be read to authorize a charter amendment which is as radically different as this is from what was before the court in the Kirby case. It is true that in the Kirby case the effect of the civil service commission amendment was that the aldermen were limited to acting on the recommendation of the commission. But the court compared it to other limitations in the St. Louis charter where the board of aldermen could act only upon recommendations of the St. Louis board of public service in some instances, or the St. Louis board of estimate and apportionment in others. The court found twelve such instances in the charter, all involving *local* boards or commissions and said these did not violate the separation of powers. In

1. There are approximately 2225 police officers in St. Louis and about 1100 members of the fire department.

Perhaps it would aid understanding to point out that historically St. Louis has not had police and firemen in the same way that many other cities have them. What the police are paid in St. Louis is determined by the state and what the firemen are paid by the city. At least, that has been the case until the charter amendment now under consideration.

every instance, these boards or commissions were either appointed by the mayor or made up of elected city officials. The people, therefore, could make themselves heard and felt through their elected officers, and, most importantly, the board of aldermen was not required to accept the recommendation of the commission. It could reject any recommendation. Thus in practice the people of St. Louis or the board of aldermen had not been deprived of power to exercise effective control over municipal salaries.

But in the charter amendment before us, an outside body, over which the city or its people have no control, has been designated to set the salary floor for the firemen, which the city must accept and somehow pay. Niether the civil service commission nor the board of aldermen have any choice except to accept as the minimum rate for the St. Louis firemen whatever the general assembly sets as the rate for the St. Louis police. The obvious intent and purpose of the charter amendment is that the function of fixing the salary floor for the St. Louis firemen will be performed by the legislature. We would be blind to reality not to know that the general assembly will have to do, and will do, the actual job of legislating, complete with hearings, pressures, and lobbying, on minimum salaries of some 1100 firemen every time it passes on salaries for some 2225 police. The legislature will set the minimum, but St. Louis will have to find the money to pay.

The charter amendment before us is a classic example of vesting power without also imposing responsibility. It violates the distribution of powers clause and I do not believe the Kirby case in any way authorizes what is being attempted here.

While the majority opinion does not discuss the matter, it cites and relies on both City of Springfield v. Clouse, banc, 356 Mo. 1239, 206 S.W.2d 539 and State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S.W.2d 532, which applied the separation of powers clause to municipalities, one to a

city of the second class and the other to a home rule charter city.

It has been pointed out that "The problem of the delegation of powers is a refinement of the broader doctrine of the separation of powers. If a department of government cannot assume powers beyond a 'proper sphere,' then a department of the government cannot divest itself or another department of its proper power by delegating or transferring the power to a third department . . . " Sutherland, Statutory Construction, Ch. 3, p. 55. In the case at bar one of the powers of St. Louis, under its charter, Art. I, Sec. 1(20), is "To provide and maintain a fire department." Necessarily this requires setting the salaries of the firemen as well as raising the money to pay them. It is the setting of the salary floor which the people of St. Louis are attempting to divest or foist on the legislature.

The majority opinion makes frequent reference to the will of the people being supreme and compares the charter amendment before us to a hypothetical example of the people of the state of Missouri adopting a constitutional amendment establishing the salary of the governor at a percentage of whatever the salary is of the President. No doubt such an amendment would be valid, even though it would in effect turn over to Congress the fixing of the salary of the governor. It might violate the separation of powers concept, but nonetheless the people of the state would be acting, and since their power is supreme, their action would be invalid only if it violated the federal constitution.

But this does not mean the people of St. Louis are supreme in the same sense, or that the charter amendment before us is somehow valid because it was adopted upon a vote of the people of St. Louis. Unlike the people of the state of Missouri, the people of St. Louis. are subject to Art. II, 1945 Constitution, and what the *people of Missouri* might be able to do about the governor's salary does not mean the *people*

*of St. Louis* could decide to set the salary of the mayor at whatever the salary is of, say, the mayor of Chicago, or Tulsa, or the governor of Kansas or Missouri, any more than could the people of St. Louis, just because they are the people, validly amend their charter to provide for a one-man dictator form of government. All these examples would be invalid as violating the separation of powers clause of the state constitution.

The majority opinion mentions State ex rel. Everett Fire Fighters Local No. 350 v. Johnson, 46 Wash.2d 114, 278 P.2d 662, which held unconstitutional a charter amendment giving an outside agency the right to set the salaries of firemen, because it was an abdication of responsibility beyond the power of the people of the city or its city council to make. The majority opinion says the Everett case is distinguishable because the fixing of wages of municipal employees was a legislative function and Washington had a statute which fixed the legislative power in the mayor and city council, so neither the council nor the people by initiative charter amendment could confer on someone else the right to fix the salaries of municipal firemen, but that there is no such statute in Missouri.

However, the rationale of the Everett case calls for an outcome opposite that of the majority opinion, because Art. II of the Missouri constitution, establishing the separation of powers, confides legislative power to the department in which it belongs (in a home rule charter city this means in the council or in the people when they legislate by popular vote) and operates to prohibit (as effectively as the Washington statute) the city council of St. Louis or the people of St. Louis from turning the legislative function of fixing minimum salaries for the St. Louis firemen over to an outside third body. As was said in Everett at 278 P.2d l. c. 666: "If the council had no legal right to (sic) so abdicate its responsibility in this matter, the people of Everett had no right, under Art. XI, § 10 of the state constitution to require

the council to do so . . . ." The aforesaid Art. XI, Sec. 10 of the Washington constitution contains the same language about a home rule charter being "consistent with and subject to the Constitution and laws of the state" as our own constitutional home rule charter provisions did at the times here involved, so the Everett case is closely in point.

St. Louis cannot exist without a fire department. In practice it must, under the charter amendment, pay whatever firemen's minimum is established through the action of the legislature in setting the police salaries. This exposes St. Louis to the risk of having to cripple the ability of the fire department to protect the citizens by reducing its size or crippling the city by having to pay minimum wages above its ability to pay, by reason of a salary minimum set by someone else, over which it has no veto or control, although being responsible for raising the money to pay for it. I do not believe the voters of St. Louis can constitutionally adopt a charter amendment which puts the city in this position.