THE CITY OF ST. LOUIS, a Municipal Corporation, ET AL., Appellants, v. LUTHER ELY SMITH ET AL., Members of the Civil Service Commission of the City of St. Louis, Respondents, No. 41330—228 S. W. (2d) 780.

Court en Banc, March 18, 1950.

Rehearing Denied, April 10, 1950.

*James E. Crowe,* City Counselor, and *John P. McCammon,* Associate City Counselor, for appellants.

408

*McDonald & Wright, Thomas F. McDonald, Wayne B. Wright* and *William H. Webster* for respondents.

*Norman Bierman* amici curiae; *Anderson, Gilbert, Wolfort, Allen & Bierman* of counsel.

410

412

LEEDY, J.—The City of St. Louis and certain of its officials appeal from a judgment of the Circuit Court of the City of St. Louis in this certiorari proceeding by which that court reviewed the action of the city's Civil Service Commission in determining the appeals of a large number of civil service employees who had received notices separating them from the city's service. The Circuit Court affirmed the Commission's action and quashed the writ.

The civil service amendment was adopted in 1941. It is now designated as Article XVIII of the charter. All references herein to such amendment are to that article. Between September 15 and October 15, 1947, notices of separation were delivered by the appropriate appointing authorities to 479 employees. Appeals to the Civil Service Commission from such action were taken by Rose Colvin and a large number of others affected thereby. The number of such appeals was finally reduced to 131 (all being employees having permanent civil service status), and, as thus reduced in number, all such appeals were heard together and determined in a single opinion or report.

The Commission held that the separations were layoffs and not dismissals, and, by a divided vote, further found and held (1) that such layoffs were improper and invalid because not made in accordance with the provisions of the civil service amendment to the charter and the rules of the Commission adopted pursuant thereto; (2) that those appellant-employees who had not already been restored to their positions should be restored forthwith; and (3) that appellant-employees "are entitled to compensation from the City of St. Louis for the period ▮▮▮ of their separation from their positions."

The purpose of the civil service amendment is declared to be "to provide a modern and comprehensive system of personnel administration for the city, whereby economy and effectiveness in the per-

sonal services rendered the City, and fairness and equity to the employees and the taxpayers of the City, alike, may be promoted." A basic requirement of the article, as specified in § 2, is that "all appointments and promotions to positions in the service of the City and all measures for the control and regulation of employment in such positions, *and separations therefrom,* shall be on the sole basis of merit and fitness, which, so far as practicable, shall be ascertained by means of competitive tests, or service ratings, or both."

The Civil Service Commission is empowered and required by § 7 to prescribe rules for the administration and enforcement of the civil service amendment, and of any ordinance adopted in pursuance thereof. § 3 directs that such civil service rules shall provide for the following things, among others, with relation to the classified service:

"(f) for indefinite tenure of employment in positions in the classified service during meritorious service, except in cases for which definite terms are prescribed by law or charter, and except in cases of temporary appointment hereunder, *but with due provision for layoff on termination of the need for employment in any position, or of funds available therefor;"* (Emphasis ours.)

The rules of the Civil Service Commission in relation to tenure and layoff are, in pertinent part, these:

"RULE IX

"§ 1. *Tenure:* Every employee who is legally appointed as a result of certification from an appropriate eligible list and who successfully completes his working period shall have indefinite tenure of employment in the classified service during meritorious service, except in cases for which definite terms are prescribed by law or charter.

"§ 2. *Layoff:* Whenever there shall be no further need for employment in any position because of either stoppage of work, or lack of available funds, or for any other reason, such position may be abolished, and regular employees in the classified service may be laid off without pay, despite any provision of the rules concerning tenure. * * *"

"RULE I

"§ 1. *Definitions:* The following words and phrases when used in these rules shall have the following meaning, unless clearly indicated in the text:

* * * * * * *

"(y) 'Layoff' means the removal of an employee because of lack of work, *failure of financial appropriation,* or other causes which do not reflect on the employee." (Emphasis ours.)

It was stipulated at the hearing before the Civil Service Commission that the sole and only reason assigned for the separations or layoffs of the appealing employees was "lack of available funds" on the

part of the city. Also, that the Board of Aldermen had, by ordinance, appropriated for the fiscal year, an amount sufficient to pay the salaries of all city employees, including those here involved. For present purposes, we will assume (although the record fails to satisfactorily establish) that shortly before the separation notices went forward, there appeared to be an impending deficit estimated at 3 to 4 million dollars for the fiscal year 1947. The Mayor and the department heads thereafter determined upon the policy of laying off as many employees as possible without seriously impairing the public health and safety, the carrying out of this policy resulting in these separations.

It was further stipulated at the hearing:

"That none of the lay-offs of any of the appellants was because there had been termination of the need for employment of any single one of said employees in any position occupied by any such employee; that no employee was laid off because his position was deemed non-essential; that, on the contrary, the services of each of said employees were needed at the time of his lay-off and were still needed by the City at the time of the hearing before the Civil Service Commission.

"That actually not one of the positions occupied by any of said employees had been abolished by the Appointing Authorities or by the City.

"That none of said employees was separated from the City Service because of any fault on his part, or for a reason which would reflect discredit upon him."

Other facts will be stated in connection with the points to which they relate.

Appellants' first contention is that funds are not "available" within the meaning of § 3 (f) of the amendment (and § 2, Rule IX, and § 1 (y), Rule I, adopted pursuant thereto) in two events: (a) If not appropriated (a proposition not controverted); and (b) if the appropriation is made on the faith of a tax which is subsequently held void. In support of the latter proposition, it is urged that the monies to be derived from the city's earnings tax failed when, in June, 1947, the ordinance therefor was held unconstitutional by this court in Carter Carburetor Corp. v. City of St. Louis, 356 Mo. 646, 203 S. W. 2d 438. We will further assume (although the record fails to so show) that the supposed deficit was threatened on this account.

In a somewhat analagous situation, the Supreme Court of Montana defined "funds available" as including "not only funds in the treasury, not otherwise appropriated, but also monies to be derived from taxes and other sources provided for by the legislative assembly for such year." Graham v. Board of Examiners, 116 Mont. 584, 155 Pac. 2d 956, 960. See, also, Ferguson v. Johnson, (Texas) 57 S. W. 2d 372. The city was not helpless under the new state of facts confront-

ing it. Indeed, it appears from the testimony of the City Counselor that at the time of the conferences of the Mayor and department heads having to do with measures to bring the expenditures of the city within its anticipated revenues, there were then pending before the Board of Aldermen some ordinances to raise revenue generally, but the witness did not know when they would be enacted into law, and did not know how much revenue they would produce. Both sides cite State ex rel. Rothrum v. Darby, et al., 345 Mo. 1002, 137 S. W. 2d 532. In that case, deductions in the salary of an employee in the classified service had been required by the City Manager through the device of an agreement which, in effect, provided for deductions from pay fixed by ordinance. Mandamus was brought to compel the city to pay the relator money thus deducted, and claimed to be due for salary. It was there said: ''Public offices and positions belong to the people and not to officers upon whom they confer appointive power. * * * The qualifications, tenure, and compensation thereof must be determined by the people or the people will lose control of their government. This must be done by the representatives the people have authorized to act for them, unless the people themselves have determined these matters by writing them into the Constitution. If the people have not thus themselves determined them, then under our Constitution and theory of government, these are legislative powers.'' [l. c. 536.]

''In any event, the charter placed upon the council, and not on the City Manager (who could only recommend), the duty of fixing salaries and authorizing other expenditures on a basis that would come within the city's revenue.'' [l. c. 541.]

In the later case of Wier v. Kansas City, 356 Mo. 882, 204 S. W. 2d 268, 271, involving claims for deductions from salaries made as in the Rothrum case, as well as some made under ordinance authority, it was said: ''It was the duty of the council to revise the salaries to fit the income of the city, and the matter of when such action should be taken was for the council to decide.''

Under § 3, Art. XVI of the charter, the Board of Aldermen has a right in considering an appropriation ordinance for salaries, as recommended by the Board of Estimate and Apportionment, to reduce any item thereof. Having the power to do so in the first instance, it follows that it may reduce an appropriation once made when it ▮▮▮ is determined that monies appropriated for such purpose will not be forthcoming. We find nothing in § 3 (n) and (s) nor in § 4 of the amendment which limits this right. The failure of a single revenue producing measure might or might not be sufficient reason to cause the legislative body to re-examine an appropriation made in reliance upon such a measure. On the other hand, it might determine that the sum appropriated remain unchanged, and provide additional sources of revenue. The matter of appropriations

for the payment of salaries of employees of the city is, in any event, a legislative question, and we hold that under the appropriation here involved, the funds became "available" in a legal sense when the ordinance became effective, and remained so until changed by the same authority. And we agree with respondents that failure to collect all the revenue anticipated at the time the appropriation ordinance was enacted (or a debt incurred) does not invalidate an appropriation that is within the revenue provided for when made. State ex rel. Rothrum v. Darby, supra; Clarence Special School District v. School Dist. No. 67, 341 Mo. 178, 107 S. W. 2d 5. These same cases, for the reasons therein stated, determine adversely to appellants their contention that the challenged action of the Commission, as affirmed by the trial court, is void because compelling the city to become indebted for more than the income provided for the year, in violation of § 26 (a), Art. VI of the Constitution.

Layoffs can be effected only by adhering to the governing charter provisions and rules enacted pursuant thereto. It is clear this was not done in this case, there being no competent evidence of the termination of "funds available therefor" as used in § 3 (f).

Appellants charge the Commission "attempted" to give the appealing employees a money judgment for the amount of their salaries during the period of the layoff. They invoke § 7 (g), declaring that the Commission shall have power, and it shall be its duty "to order the reinstatement without loss of pay of any employe who has been discharged, demoted, or reduced in rank or compensation for religious, racial or political reasons." But they contend that this provision constitutes the sole basis for restoration without loss of pay, and that such basis was wholly lacking in the matter of these appeals; that therefore in finding that the employees were entitled to be restored to their positions with compensation from the city for the period of their separation, the Commission usurped judicial powers, in violation of Art. II of the Constitution. This contention overlooks the provisions of § 7 (d), reading as follows:

"The Commission shall have power, and it shall be its duty:

"(d) to consider and determine any matter involved in the administration and enforcement of this Article and the rules and ordinances adopted in accordance therewith that may be referred to it for decision by the director, or on appeal by any appointing authority, employe, or taxpayer of the City, from any act of the Director or of any appointing authority. The decision of the Commission in all such matters shall be final, subject, however, to any right of action under any law of the State or of the United States;"

This is a provision of the city's own charter. It is concededly sweeping, but the Commission's action is clearly referable to it. There were no formal pleadings before the Commission, but in all cases the appealing employees asked that their appeals be considered

418

and determined, and that they be ordered reinstated without loss of pay, and all parties admitted "that jurisdiction of these appeals is vested in this Commission * * *." In view of the foregoing, and the absence of any direct attack upon the constitutional validity of § 7 (d) of the charter, we think this question, and others urged in the brief, which are determinable under the latter section, should not be ruled in this proceeding.

The judgment is affirmed. All concur.