Harry SANDERS, Harry Rose, John Deibel, Harry Berniger, Bernard Dreyer, George Froehly, George Goetemann, Orville Kundert, Ivan Landert, Charles Merlotti, William J. Meyer, Harry J. Novak, Rudy Odorizzi, Dewey Short, Allen W. Stickner, William P. Thornton, Nicholas Vaiana, Alfonso Vallosio, Gustave Wehmeier, Walter Westcott, George Wiegand, Sam Yoffie and Joseph Sweifel, Appellants,

v.

CITY OF ST. LOUIS, a Municipal Corporation, Respondent.

No. 45823.

Supreme Court of Missouri, Division No. 2.

June 10, 1957.

Motion for Rehearing as to Transfer to Court en Banc Denied July 8, 1957.

Norman Bierman, Norris H. Allen, Stuart M. Haw, Jr., and Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for appellants.

James V. Frank, City Counselor, and John J. Shanahan, Assoc. City Counselor, St. Louis, for respondent.

BARRETT, Commissioner.

In May 1954 the Board of Alderman of the City of St. Louis passed and the Mayor signed an ordinance, No. 47064, "to regulate employer and employee relationships between the City of St. Louis *and all employees in the classified service, including a compensation plan,* terms and conditions of employment, * * *." The ordinance specifically repealed the prior ordinance, No. 46210, and its amending ordinance, No. 46334, dealing with the same subject. In the repealed ordinances operators of heavy street cleaning equipment were classified in "Grade 14" as "Heavy Equipment Operator" with a wage scale of $298.90 to $330.90 monthly. In the new, revised ordinance operators of heavy street cleaning equipment were placed in "Classification Grade 17" and the name of their position was changed to that of "Street Cleaning Equipment Operator" with a maximum wage scale of $302.35 a month. The immediate effect of the ordinance, as to operators of heavy street cleaning equipment, was to reduce their monthly pay $28 a month.

This is a suit by 23 operators of heavy street cleaning equipment, representing a class of 250 similarly situated, for a declaratory judgment and to recover the difference in their monthly pay, $28 a month from May 3, 1954, as to the 23 plaintiffs a sum in exceess of $17,108.94. In their petition the plaintiffs allege that they are permanent civil service employees in the classified service and have been operating heavy street cleaning equipment for more than ten years, that they had been receiving a salary of $330 a month and by changing the "name or Class Title" of their positions

their salaries had been reduced $28 a month. In general, the plaintiffs sought a declaratory judgment that they had been illegally and improperly transferred from one classification grade to another and thus reduced in pay, all in violation of Article XVIII of the Charter of the City of St. Louis and the Rules of the Civil Service Commission. Claiming that the new ordinance is invalid, the plaintiffs allege that they are entitled to be paid under the prior repealed ordinances and accordingly pray judgment. The trial court sustained the defendant city's motion to dismiss the petition and the plaintiffs have appealed.

In their brief and argument the plaintiffs' contention that the court erred in sustaining the motion to dismiss their petition has taken the broadest possible scope and may only be summarized here. One phase of the argument concerns the ordinance, its enactment and validity in general, and the other concerns the Director of Personnel and what may be denominated the force of the administrative phase of the charter and the civil service. In its essence, what we have termed the first phase of the case, there is but a single question which the plaintiffs state and attempt to illustrate in different ways. Their basic claim is contained in this sentence from their argument: "The main question presented by this appeal is whether under Article XVIII of the Charter of the City and the Civil Service Rules, plaintiffs, permanent employees of the City of St. Louis in the classified service, could be reduced in pay by defendant City, not on the sole basis of merit and fitness, but by merely changing the name of their position from 'Heavy Equipment Operator' to 'Street Cleaning Equipment Operator', calling this a new 'Class Title', and reallocating this new title to a lower pay classification grade, when there was no change whatsoever in the duties of their position or in its responsibilities, or in the qualifications required for it, nor was there any change in the work required or actually performed by plaintiffs,

the incumbents of the position." It is said that the plaintiffs' reduction in pay was not based "on the sole basis of merit and fitness" (Charter Art. XVIII, Sec. 2(2); Rule II, Sec. 1(a)) and so was in direct violation of the charter and rules. In this connection it is urged that the power of the Board of Aldermen and the Civil Service Commission is strictly limited by the provisions of Article XVIII of the charter and that as permanent employees in the classified service the plaintiffs are entitled to the pay provided by the prior ordinances. This, briefly, is the plaintiffs' contention in general.

On the other hand, upon this phase of the appeal, it is the contention of the respondent City that "The reduction of pay and compensation of plaintiffs, permanent Civil Service employees in the classified service, was effected by enactment of Ordinance 47064, the result of the exercise of legislative power vested in the Board of Aldermen by the Charter of the City of St. Louis. Since no facts are alleged to show unreasonableness of the salaries established by Ordinance 47064, or to show any limitation of the authority of the Board to enact such compensation ordinance, plaintiffs' amended petition does not state a good and valid cause of action, and the trial court properly sustained defendant's Motion to Dismiss."

■ It is not necessary in this opinion to quote and interpret the numerous cited sections of the charter or to again state its purposes, particularly Article XVIII. The article has been before this court on several occasions and each time the court has stated its general purpose "to provide a form of civil service for city employees in the classified service designed so as to insure employment and continuity of service on grounds of merit and fitness." Kirby v. Nolte, 351 Mo. 525, 173 S.W.2d 391; Kirby v. Nolte, 349 Mo. 1015, 164 S.W.2d 1; City of St. Louis v. Smith, 360 Mo. 406, 228 S.W.2d 780. And accordingly the spirit and text of the charter and the article have been scrupulously enforced. The charter is the city's organic law and bears the same relation to its ordinances that the constitution of a state bears to its statutory enactments (Hillig v. City of St. Louis, 337 Mo. 291, 295, 85 S.W.2d 91, 92), but that does not mean that the Board of Aldermen is powerless to exercise its legislative functions and reclassify civil service employees and their pay within the reasonable limitations of Article XVIII. Article XVIII provides for and governs "civil service," and the mayor and Board of Aldermen are required to adopt an ordinance providing for civil service and "a comprehensive compensation plan for the fixing of rates of pay." Art. XVIII, Sec. 4(a). But, "subject to the limitations of this charter," "The legislative power of the city shall * * * be vested in a board of aldermen" (Art. IV, Sec. 1), and "The board of aldermen shall by ordinance fix or provide for the fixing of salaries or compensation of officers and employees * * * subject to the provisions of this charter." Art. VIII, Sec. 7. In this sphere the board of aldermen must operate within the framework of Article XVIII, but the article does not prohibit the board of aldermen, once it has enacted an ordinance classifying employees and fixing their pay, forever afterward from revising, repealing and enacting new comprehensive ordinances. As a matter of fact the ordinances which the appellants say govern their pay, 46210 and 46334, repealed a prior similar ordinance, 45554. Section 26, to which the appellants point, provides: "*The titles and rates of pay of any positions in the classified service, as set forth in any ordinance or appropriation now or hereafter in effect, shall be deemed to be permissive only,* authorizing positions that might properly be designated by such titles and compensated at such rates if so constituted that such titles and rates would apply under the provisions of this Article, *but not as mandatory in requiring that such titles shall be used to designate such positions to the exclusion of all others or that payments shall be made at such rates, irrespective of the true nature of the positions existing by virtue of such authority and of whether*

*such titles and rates are appropriate to the positions as actually constituted."* Under this provision, titles and rates of pay must be "proper" and, perhaps as the appellants argue, "in accordance with the true duties of and character of work required by the positions," but the section does not mean that the Board of Aldermen may not reasonably revise the ordinances fixing classifications, titles and salary. City of St. Louis v. Smith, supra.

 Several sections of the charter and rules are cited and it is claimed that the ordinance is invalid in that it is contrary to or does not meet the requirements of these provisions, but careful analysis reveals that the appellants do not claim that the contemplated procedural processes were not literally complied with. It is a fair inference from the petition and the argument that a survey was made in 1953 and early 1954 and a comprehensive "classification plan" considered. The Director of Personnel may have made one recommendation and the Civil Service Commission another, nevertheless, the commission properly made the recommendation for the new ordinance and the Board of Aldermen adopted it. Art. XVIII, Secs. 7(b), 9; City of St. Louis v. Smith, supra; Kirby v. Nolte, supra; 62 C.J.S. Municipal Corporations § 723, p. 1467. The ordinance was not an "administrative" reduction in salary, it was a "legislative" determination of municipal policy. Fortin v. City of Chicopee, 301 Mass. 447, 17 N.E.2d 441. All salary distinctions are not illegal or improper, only those that are unreasonable, arbitrary and without reasonable basis are prohibited. Giacobbe v. Board of Education of City of N. Y., Sup., 126 N.Y.S.2d 46. "Demotion" in rank or pay does not constitute a "removal from office" necessarily, and reclassifications or reductions in salary schedules, if made in good faith, do not violate civil service laws if reasonable and within the framework of the charter. 3–4 McQuillan, Municipal Corporations, Secs. 12.120, 12.132, 12.134, 12.176–12.179, 12.196–12.197. Basically, the only allegation by which it is sought to in-

validate the ordinance is the fact that the appellants' pay has been reduced, they say by a mere change in title without regard to merit and fitness, but, of course, these allegations are not self-demonstrative of the fact of illegality and do not demonstrate that the changes in pay and title were so unreasonable, arbitrary or capricious as to violate either the letter or spirit of the charter. Jazwinski v. City of Milwaukee, 253 Wis. 17, 33 N.W.2d 224; State ex rel. McClure v. George, 145 Ohio St. 187, 61 N.E.2d 87.

 The appellants protested their "allocation" to a lower class at reduced pay and the Director of Personnel, it is said, decided the protest in their favor, ruling that they were entitled to be paid at the old rate of $330 a month. It is stated that this was "an administrative act and decision" by the director, that the city did not exercise its right to appeal, and, therefore, his decision was final and binding upon the city. Again numerous provisions of the charter and rules are pointed to but it is not necessary to quote them at length and demonstrate their inapplicability to the circumstances. What has been said heretofore may be sufficient to determine this second phase of the appeal. But if it is not, it is plain, from the charter, that the director's powers and duties are, in the main administrative and that he must function within the framework of the valid ordinances enacted by the Board of Aldermen and the rules adopted by the Civil Service Commission. Charter, Art. XVIII, Secs. 3(v), 7, 8, 9; Rule V(1). "The Article (XVIII) provides some checks and balances between the Director of Personnel, the (Civil Service) Commissioners and other municipal officers" (Kirby v. Nolte, 349 Mo. loc. cit. 1028, 164 S.W.2d loc. cit. 9), but the appellants' argument here in favor of the director's actions is analogous to the untenable position of the Comptroller in the first Kirby v. Nolte case. But in that case, in enumerating what must be done under Article XVIII, the court said: "The Civil Service Commission is required to make rules, amendments and

recommendations *from time to time* (italics supplied) for the administration and enforcement of the new Article and ordinances adopted in pursuance thereof. These rules must cover a classification plan for all positions in the Department; a systematic compensation plan; another prescribing merit and fitness tests; a plan for retirement benefits; regulation of hours of duty, holidays, attendance and absence; and other matters mentioned in the new Article." See also the specific provision of Article XVIII, Sec. 7. And the allegations in the plaintiffs' petition as to the actions of the director and the force and effect of his rulings are not sufficient to alter the provisions of the charter limiting his functions to the framework of the charter, the validly enacted ordinances and the unchallenged rules of the Civil Service Commission.

While we have not set forth every detailed argument and every cited charter provision and rule and analyzed and demonstrated point by point, we have carefully considered them and the essence of the appeal is the single question of whether the Board of Aldermen may, upon the recommendation of the Civil Service Commission, repeal a prior comprehensive ordinance and enact another which has the effect, as to these plaintiffs, of changing their title and reducing their pay in the sum of $28 a month. As indicated, the change and reduction is not shown to have been so arbitrary and capricious as to be manifestly unreasonable, and having found that the Board of Aldermen had the power to enact the ordinance within the framework of the charter, particularly Article XVIII, the judgment dismissing the petition for failure to state a claim is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.