**Michael J. LOGUE, Plaintiff-Respondent,**

v.

**CITY OF CARTHAGE, Missouri, a Municipal Corporation, Defendant-Appellant.**

No. 11909.

Missouri Court of Appeals, Southern District, Division One.

Feb. 9, 1981.

Loren R. Honecker, Sherwood, Honecker & Bender, Springfield, for plaintiff-respondent.

Gene C. Thompson, Carthage, for defendant-appellant.

TITUS, Judge.

As a former fireman of Carthage, plaintiff sued defendant city [1] to recover unused accumulated sick leave benefits to which plaintiff claimed he was entitled. Except for admitting its status as a municipal corporation and that plaintiff had demanded and been refused the claimed benefits, defendant's answer to the petition was a simple general denial coupled with the assertion that plaintiff's pleading failed to state a cause of action. After considering the evidence, most of which was agreed to by stipulation, the trial court made written findings of fact and conclusions of law and entered judgment for plaintiff against defendant. Defendant appealed.

The court nisi's findings of fact, not questioned on appeal, are in part as follows. Plaintiff was employed by defendant as a fireman from March 12, 1968 to May 31, 1977. On April 17, 1969 [slightly over a year after plaintiff's initial employment] defendant enacted a work rule declaring

---

1. The record indicates the Carthage Fire Department and its employees were under the direct control and supervision of the Carthage Water and Electric Plant which, in turn, was under the control and supervision of the Carthage Board of Public Works. However, as no issue is made concerning this municipal menage, we, as did the parties and the trial court, properly treat the acts of the plant and board as acts of the city.

that firemen would be entitled to accumulative sick leave benefits on the following basis: "After completion of one (1) year continuous service an employee shall be paid his accumulated sick leave upon termination provided the employee notifies the Fire Chief in writing at least two (2) weeks prior to the date of intended termination." On August 7, 1975, defendant [through its Board of Public Works] amended the April 17, 1969, work rule so that accumulated sick leave benefits would be payable "only upon employees [sic] retirement or death." From April 17, 1969 [date the initial work rule was effective, supra] until August 7, 1975 [date the work rule was amended, supra] plaintiff had accumulated 48 days of unused sick leave benefits. After August 7, 1975, to the date plaintiff terminated his employment with defendant on May 31, 1977 (after giving two weeks prior written notice thereof to the Fire Chief on May 17, 1977), plaintiff had used four days of sick leave. Applying defendant's method of calculating the per diem value of sick leave benefits, i. e. $79.34 per day, plaintiff was entitled to 44 days [48 days accumulated from April 17, 1969 to August 7, 1975, less four days used thereafter] or a total of "$3,490.96 together with interest of 6% per annum from May 31, 1977."

Especial note should be made that the unused accumulated sick leave benefits claimed by plaintiff, and employed by the trial court in determining the gross benefits due, involve only those which accrued to plaintiff between April 17, 1969 to August 7, 1975, or before the work rule was unilaterally amended by defendant on the latter date to limit benefits payable only upon retirement or death. In other words, except for deducting the four days sick leave used by plaintiff subsequent to August 7, 1975, all judicial calculations and net results were confined to sums accruing prior to the effect of any limitations imposed by the amendment.

◼ Rights provided municipal employees to accumulated unused sick leave benefits like accumulated unused vacation benefits upon termination of the employer-employee relationship, with no other conditions attached, are contractual rights. *City of Webster Groves v. Institutional & Public Employees Union*, 524 S.W.2d 162, 167[12] (Mo.App.1975). Such benefits are considered to be part and parcel of the employee's overall compensation earned during the period of employment and form a part of the employment contract. When such benefits become available after the prescribed period of service, they are to be considered earned compensation for services and are not to be viewed as a bonus or an arbitrary award. *Vangilder v. City of Jackson*, 492 S.W.2d 15, 17[1] and 18[4] (Mo.App.1973); *Bruce v. City of St. Louis*, 217 S.W.2d 744, 748 (Mo.App.1949). Provided they are of a kind municipal corporations can legally make, cities are bound by their own contracts in the same manner and to the same extent that natural persons and private corporations are bound by their agreements. 5 McQuillin, Municipal Corporations (1969 Rev.Ed.), § 19.39, p. 498.

Defendant's first two points relied on contend the court nisi erred in finding the existence of a contract between plaintiff and defendant which could not be unilaterally modified by the defendant city because, (I) plaintiff "failed to allege or prove, and the court failed to find, the modification to be so arbitrary and capricious as to be manifestly unreasonable," and because, (II) plaintiff "failed to allege or prove [defendant] was without constitutional power" to modify the contract without plaintiff's specific consent. Defendant cites *Sanders v. City of St. Louis*, 303 S.W.2d 925 (Mo.1957) to point I and *City of Dallas v. Trammell*, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 997 (1937), to point II. Frankly, we fail to comprehend the pertinence of these two points as they relate to this case. As previously seen, there was no issue as to the right vel non of the city to alter or amend the work rule. The principal issue, as we see it and as the trial court apparently saw it, was whether defendant's act of amending its work rule had any retroactive effect in stripping plaintiff of the benefits which had accrued to him prior to such alteration. The prospective effects of the rule change

were not in issue. Consequently, whether the modification was or was not arbitrary, capricious and manifestly unreasonable or whether the city did not have the constitutional right to alter the original contract as it applied to the future, were not issues required to be and which were not determined.

In reference to defendant's citation of authorities regarding points I and II: In *Sanders* it was held that in the absence of a showing that the city's action was arbitrary, capricious and manifestly unreasonable, its board of aldermen had power to transfer city employees to a lower classification grade at a reduced salary without being liable for the difference in pay. How this citation succors defendant's point I escapes us. The *City of Dallas* case merely held that an employee had no vested interest in a pension system or its continuance. Nonetheless, the case recognized, as the trial court herein did regarding accrued accumulated unused sick benefits, "that as to accrued installments payable to an employee there is a vested right in the employee to receive it and the Legislature cannot deprive him of it." *Pension Bd. of Pension ·Sys. v. Board of Managers*, 441 S.W.2d 228, 232 (Tex.Civ.App.1969), rev'd on other grounds, 449 S.W.2d 33 (Tex.1969).

█ Via points relied on III and IV, defendant asserts the trial court erred in finding that plaintiff had a vested right to the unused accumulated sick leave benefits because he failed to allege and prove he became and remained employed in reliance on such vested right. Even assuming that defendant's initial noncontributory sick leave benefit plan was gratuitous in nature, it would ripen into an enforceable contract between plaintiff and defendant if plaintiff had knowledge thereof and furnished consideration therefor via continued employment in reliance thereon. *Ehrle v. Bank Bldg. & Equip. Corp. of America*, 530 S.W.2d 482, 491[10] (Mo.App.1975). See also, *Hinkeldey v. Cities Service Oil Co.*, 470 S.W.2d 494, 502 (Mo.1971). The first plan, the one under which plaintiff claims, became effective April 17, 1969, some eight

years before plaintiff terminated his employment effective May 31, 1977. While there was no direct evidence of plaintiff's knowledge of the plan, it was surely a matter of public record. Moreover, and as found by the trial court, when plaintiff gave timely written notice of his intended termination, he included therein, as required by the original work rule, a request for payment of sick leave benefits which had accrued to him prior to defendant's 1975 unilateral alteration. Hence, plaintiff was certainly aware of the original plan, its benefits and conditions. We are, therefore, unwilling to conclude that plaintiff continued his employment after 1969 in ignorance of the original work rule or that he did not continue his employment from 1969 to the date of his termination in reliance thereon. *Ehrle*, supra, 530 S.W.2d at 491. Cf. *Geiwitz v. Geiwitz*, 473 S.W.2d 781, 784–785[4] (Mo.App.1971). Furthermore, as already seen, to transmogrify a sick leave benefit from a gratuity into an enforceable contract would necessitate, inter alia, plaintiff's continued reliance thereon. It is plaintiff's reliance that provides consideration for the change. Consequently, any element of defendant's points III and IV, supra, which alludes to the absence of proof of reliance, i. e., absence of proof of consideration, must perish as such was an affirmative defense which went unpleaded. Rule 55.08, V.A.M.R.; *Casserly v. Bench*, 458 S.W.2d 893, 898[1] (Mo.App.1970).

Contentions contained in point relied on V in defendant's brief have heretofore been answered and refuted by what we have had to say in the fourth paragraph of this opinion.

Judgment affirmed.

All concur.