**William R. BOSSE, Robert R. Thompson, George M. Kinsey, William R. Kunz, Thomas R. Morton, and Ronald R. Sutherland, Appellants,**

v.

**CIVIL SERVICE COMMISSION OF the CITY OF ST. LOUIS, et al., Defendants-Respondents.**

**No. 46422.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 6, 1983.

---

Charles Oldham, St. Louis, for appellants.

Judith Ronzio and Robert H. Dierker, Jr., Associate City Counselor, St. Louis, for defendants-respondents.

SMITH, Judge.

Plaintiffs are six employees of the City of St. Louis. They occupy management level jobs in the government of the City. They brought this suit to challenge the decision of the Civil Service Commission of St. Louis upholding the job grade levels into which plaintiffs were placed in October 1980 by their "appointing authorities." The trial court upheld the action of the Civil Service Commission. We affirm.

■ Prior to 1980 the Charter of St. Louis limited salaries of municipal employees to $25,000. In 1980 an amendment to the Charter was passed by the electorate repealing that limitation. Pursuant to that amendment the Board of Aldermen passed Ordinance 58159 (effective Oct. 19, 1980) providing for new salary levels for the employees of the City. Those levels were based upon grades and steps previously in existence and generally speaking provided for "lock-step" increases pursuant to the grade and step occupied by the employee under the prior ordinance on the effective

date of Ordinance 58159. The pay schedules were based on two classifications, general and management. Plaintiffs were all under the management schedule.

There was evidence before the Commission that prior to the Charter amendment supervisors and appointing authorities took inconsistent and divergent approaches to grading and stepping employees who had reached the Charter-imposed maximum salary, as each of the plaintiffs had. In some cases superiors routinely upgraded such employees as a "pat on the back" for generally good effort, realizing that such upgrading had no effect on salary. In other cases, the superiors would not bother with making upgrading reports recognizing that such upgrading had no practical effect on the employee's pay level. As a result the grades and steps of high level employees prior to the effective date of Ordinance 58159 did not necessarily reflect the employees' relative level of competence and experience. In recognition of this situation Ordinance 58159 contained the following provisions:

"(2) Each appointing authority for employees in competitive positions whose salary is established in the Management Pay Schedule contained in Section 2(b)(1) of this ordinance and whose bi-weekly rate for full-time employment was $961.53 in Ordinance 58054 [the prior ordinance] shall carefully review the salary step and position in the salary range of each such management employee to determine if, in the judgment of the appointing authority, the employee's salary step and position in the salary range is a fair and reasonable reflection of the employee's performance of the duties of his or her position, degree of effort and effectiveness in carrying out assignments and contribution to the organization's achieving its objectives. *In making this determination, the appointing authority shall consider that payment at the fifth step (Step E) of the Management salary*

*range should be the salary step for competent performance of the duties of the position and that payment at a salary step above the fifth step of the salary range shall be made only to those seasoned employees whose regular and ongoing job performance is clearly commendable and distinguished and whose efforts and contribution toward the organization's achieving its goals is recognized and demonstrable.* In making the judgment, the appointing authority shall consider the employee's performance from both a qualitative and quantitative perspective . . .

(4) No employee shall receive a lower rate of pay by reason of the adoption of the new pay schedules in this ordinance." (Emphasis supplied).

At the time the ordinance was to become effective, the Mayor took a strong position with his cabinet that the underlined portion of Section 9 was to serve as the standard for evaluation of management level employees. The thrust of the Mayor's position was that maximum level employees above Step E would be downgraded to that level (but no more than two steps) unless such downgrading would result in an actual loss of salary. Similarly maximum level employees below Step E could be upgraded no more than two steps to that step if justified by the criteria of Section 9. Whether this strong position reached the level of an order or simply a strong policy pronouncement is not definitively established by the evidence.[1] All of the plaintiffs were downgraded two steps[2] by their appointing authorities. There was evidence that at least some of the downgrades were made solely because of the Mayor's policy and that the supervisors would have, in the absence of that policy, left the higher grades intact. All of the plaintiffs received substantial pay increases, but lesser increases than if they had retained their higher step ratings.

1. Some employees in certain departments retained ratings higher than Step E because their appointing authorities did not implement the Mayor's position either through inadvertence or because of disagreement with it.

2. This two-step change brought four of the six appellants to Step E and the others to Step F.

The bulk of plaintiffs' attack is on the policy of the Mayor and a challenge to his authority to establish the policy he did and to have his cabinet implement it. It is really not necessary for us to reach that issue. Each of the employees was downgraded by his appointing authority. Under the terms of Section 9 of Ordinance 58159 a management employee is to be classified at Step E if he is competent in the performance of the duties of his position. A challenge to a Step E rating requires the employee to establish that his performance is so clearly "commendable and distinguished" and his efforts and contribution toward the organization's achieving its goals are so "recognized and demonstrable" that it would be arbitrary to classify the employee at Step E. Without in any way denigrating the employees here involved, we cannot say that as a matter of law they have carried this heavy burden. That they competently perform their duties and are regarded as valuable employees is clear from the record. That their performances clearly exceed the level of competence required for their jobs does not appear irrefutably, if indeed such a performance level is capable of objective proof. On the record before us, we find no basis for concluding that the standards of Section 9 of the Ordinance have been violated. We are authorized to affirm the Commission's findings on that basis. *Stewart v. Board of Education of Ritenour,* 574 S.W.2d 471 (Mo.App.1978) [1–3].

■ Because the Commission and the trial court based their decisions on upholding the authority of the Mayor, we will briefly touch on that point. Under the Charter the Mayor is the chief executive officer of the City and exercises a general supervision over all the executive affairs of the City and is responsible to see that each officer and employee performs his duty. The Charter further provides that the comprehensive system of personnel administration devised for the City shall promote economy and effectiveness in the personal services

rendered to the City and that "fairness and equity to the employees and the taxpayers of the City, alike, may be promoted." It also provides that regulation of employment shall be on the sole basis of merit and fitness. We have heretofore described the circumstances which existed in the grade and step system for maximum salary employees on the effective date of Ordinance 58159. Under the mandates of the Charter, the Mayor was authorized to exercise his powers to insure that personal services were rendered economically with fairness and equity to taxpayers as well as to employees. He did so within the framework of Ordinance 58159.[3] He was not required to allow the bureaucracy under his control to establish its own levels of pay based on policies established under different circumstances. Ordinance 58159 established a legislative determination of municipal policy and the implementation of that policy did not constitute an administrative reduction in position or salary. *Sanders v. City of St. Louis,* 303 S.W.2d 925 (Mo.1957) [4–7]. The language of Ordinance 58159 was complied with and we find no abuse in the exercise of the Mayor's powers. *Stovell v. Civil Service Commission etc.,* 636 S.W.2d 364 (Mo. App.1982) [3].

■ Plaintiffs also raise objections to the Commission's findings on the basis that the step changes constitute a reduction in salary without cause contrary to provisions of the Charter and ordinances. Plaintiffs suffered no reduction in salaries; in fact, they received increases up to $9000 annually or an increase of approximately 36%. What they suffered was a loss of an expectancy of a higher raise. There is no merit to their contention. *Sanders v. City of St. Louis,* 303 S.W.2d 925 (Mo.1957). Nor are they entitled to attorneys' fees inasmuch as they have demonstrated no improper conduct by the City nor any compensable loss to themselves. *See, Mayor, Councilmen, and Citizens of Liberty v. Beard,* 636 S.W.2d 330

**3.** Plaintiffs contend that the Mayor's concern for the taxpayers and their reaction to raises which might be viewed as excessive was a "political consideration" casting doubt on his exercise of his powers. If so, it is a "political consideration" specifically mandated by the Charter and implicitly at least by the obligations of public office.

(Mo. banc 1982) [2]; *Wolf v. Missouri Training School For Boys,* 517 S.W.2d 138 (Mo. banc 1974) [9].

Judgment affirmed.

PUDLOWSKI, P.J., and KELLY, J., concur.