Jerry CODAY, Merrell Coffman, Ray E. Fite, Ted Hobson, George Larbey, Richard Stokes, Charles Upp, Richard Weter, Appellees,

v.

**CITY OF SPRINGFIELD, MISSOURI, a municipal corporation, Appellant.**

No. 90–1798.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1990.

Decided July 31, 1991.

Rehearing Denied Sept. 20, 1991.

Dennis Buss, Springfield, Mo., for appellant.

Richard Crites, Springfield, Mo., for appellees.

Before BOWMAN and BEAM, Circuit Judges, and HARRIS,* Senior District Judge.

BEAM, Circuit Judge.

The City of Springfield, Missouri, passed an ordinance changing the job titles and prospectively affecting the pay grades of detectives employed in its police department. Appellees brought this lawsuit claiming that they were being deprived of a property interest in their jobs without due process of law. The district court granted their motion for summary judgment. We reverse.

I. BACKGROUND

On February 15, 1988, the Springfield City Council adopted General Ordinance No. 3896, which deleted the job titles of "Police Detective" and "Detective (Polygraph Examiner)" from the city code and transferred the persons in those positions to the job position of Police Corporal. Before the city council passed this ordinance,

---

* The HONORABLE OREN HARRIS, Senior United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

the appellees were all employed by the city as detectives. According to the city's ordinance, the employees, as police corporals, will continue to receive wage increases at their former rate of pay for a period of four years from the date of the passage of the ordinance. After four years, the employees' wages are to be fixed, with no further wage increases, until the lower rate of pay for Police Corporal equals or exceeds their rate of pay.

In August 1989, the employees brought this lawsuit pursuant to 42 U.S.C. § 1983 (1988), alleging, *inter alia,* deprivation of a constitutionally-protected property interest without due process of law. In addition to their lower rank and the prospective effect on their wages, the employees imply in their brief that they now have duties and obligations as police corporals that they did not have as detectives, such as working evenings and weekends and buying, wearing, and maintaining police uniforms. Brief for Appellees at 9. The city, on the other hand, in addition to denying any violation of due process, asserts that its ordinance will save "more than $32,000 a year" and increase "flexibility of job assignments within the police department." *Coday v. City of Springfield,* No. 89–3299–CV–S–4, Order at 2 (W.D.Mo. Jan. 10, 1990).

The district court granted the employees' motion for summary judgment and enjoined the city from enforcing its ordinance. The court based its decision primarily on the Springfield City Charter. The court observed that according to the charter the administrative service of the city is divided into two groups of personnel, unclassified service and classified service, and that the employees in this case are included in the latter group. As classified employees, the district court explained, they are entitled to the protection of section 6.11 of the Springfield City Charter. Section 6.11 provides, in part:

> No person in a classified service or seeking admission thereto, shall be appointed, promoted, reduced, removed, advanced, or retarded on any basis for any reason other than qualifications, merit, and fitness for the service or lack thereof. Any such actions shall be taken wholly without favoritism or discrimination and on no basis other than provided herein.

*Springfield, Mo., City Charter* § 6.11. The district court concluded that this charter provision gave the employees a property interest in their jobs as detectives and that the city council had violated this provision by "reducing" the employees to the rank of Police Corporal on a basis other than qualifications, merit, or fitness for service.

Furthermore, according to the district court, the employees are entitled to the protection of section 6.10 of the city charter. Section 6.10 provides, in part: "Any employee under the classified service who shall be discharged or reduced in rank or compensation shall be presented with written reasons for such discharge or reduction within five days thereafter. The employee shall have the privilege of a public hearing before the Personnel Board." *Id.* at § 6.10. The district court concluded that because "[n]one of these procedures were followed by the [city] with respect to [the employees'] reductions in rank," the city council's ordinance violated the charter. *Coday v. City of Springfield,* No. 89–3299–CV–S–4, Order at 3–4 (W.D.Mo. April 10, 1990). According to the district court, the city "must amend its charter before it may" pass an ordinance such as the one involved in this case. *Id.* at 5.

## II. DISCUSSION

Our standard for review of a summary judgment is the same well-established standard applied by the district court. Thus, we will affirm the district court's decision if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, we view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See FDIC v. Virginia Crossings Partnership,* 909 F.2d 306, 309 (8th Cir.1990).

To determine whether the employees in this case have a property interest in their

employment as detectives, we must look, as the district court did, to the state and local law to see how the detective positions were created and defined. In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court explained, " 'Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....' " *Id.* at 344 n. 7, 96 S.Ct. at 2077 n. 7 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). After reviewing state and local law, we conclude that no constitutionally-protected property interest existed in the employees' positions as detectives.

Our decision, like the district court's, is based primarily on an examination of the city's charter, which gives a broad grant of authority to the city council. According to sections 1.2 and 1.3, the city government has all powers possible under the law, including any not explicit in the charter, and all the powers of the city are vested in its elected council. *See Springfield, Mo., City Charter* §§ 1.2, 1.3. The charter also expressly provides for the city council's power over the organization and operations of the police department. Section 4.4 states, in part:

> The police department shall preserve peace and order, enforce the city ordinances, prevent crime, detect and apprehend violators of all laws and ordinances, regulate traffic and perform such other duties relating to public peace, order and safety as the council shall prescribe.
>
> ....
>
> The council shall by ordinance provide for the organization of the police department and may classify the members thereof and prescribe their qualifications and duties.

*Id.* § 4.4. Furthermore, section 19.7 expressly provides the city council with the power to establish the maximum and mini-

mum salaries for employees in the classified service of the city. *Id.* § 19.7.

The district court is correct that the employees in this case are entitled to the protections of sections 6.10 and 6.11 of the city charter. But the district court has misinterpreted the scope of those sections.[1] Sections 6.10 and 6.11—which are contained within Article VI of the charter, labeled "Department of Personnel"—apply only to administrative actions, such as the promotion or discipline of employees. They do not limit or preclude the city council's legislative authority to make necessary policy and budget decisions; they do not somehow override the express authority for the city council's actions in sections 4.4 and 19.7; and, thus, they do not create a constitutionally-protected property interest that prohibits the city council from passing the ordinance at issue in this case.

A similar distinction between legislative and administrative action was explained in the Missouri Supreme Court's decision in *Sanders v. City of St. Louis*, 303 S.W.2d 925 (Mo.1957), a case involving interpretation of the charter for the City of St. Louis. In *Sanders*, the Board of Aldermen of the City of St. Louis passed an ordinance that changed the job title of "Heavy Equipment Operator" to "Street Cleaning Equipment Operator" and immediately reduced the wage scale and salary of those employees. *Id.* at 927. All of the employees affected were in the classified service of the city. They brought a lawsuit claiming that the city's ordinance was in "direct violation" of the Charter of the City of St. Louis and the Rules of the Civil Service Commission, which prohibited any reduction in pay except " 'on the sole basis of merit and fitness.' " *Id.* at 928 (quoting Charter Art. XVIII, sec. 2(2); Rule II, sec. 1(a)). The Missouri Supreme Court rejected the employees' claim and stated that

> [t]he charter is the city's organic law and bears the same relation to its ordinances that the constitution of a state bears to

---

1. Indeed, if we followed the rationale of the district court, all city employees in the classified service would have a constitutionally-protected property interest in their jobs, job titles, job duties, etc., which, for the duration of their employment, could not be abolished or altered in any way by the city's legislative body.

its statutory enactments, but that does not mean that the Board of Aldermen is powerless to exercise its legislative functions and reclassify civil service employees and their pay within the reasonable limitations of Article XVIII.

*Id.* (citation omitted).[2] The court further noted that "[t]he ordinance was not an 'administrative' reduction in salary, it was a 'legislative' determination of municipal policy." *Id.* at 929. The court concluded that because the employees did "not demonstrate that the changes in pay and title were so unreasonable, arbitrary or capricious as to violate either the letter or spirit of the charter," their lawsuit was properly dismissed by the lower court. *Id.*[3]

## III. CONCLUSION

For the reasons stated, the order of the district court granting the employees' motion for summary judgment is reversed and the district court is instructed to enter summary judgment in favor of the city.

**2.** To look, by analogy, at other cases involving city charters is problematic: the cases do not contain the full text of each charter and a court, as in *Sanders,* sometimes bases its decision on charter provisions too numerous to "set forth." *Sanders,* 303 S.W.2d at 930. The problems, however, are not so difficult and the charter provisions not so unique that we should entirely ignore these other decisions, as the employees in the present case seem to argue. *See* Brief for Appellees at 36–37 (stating that a "rose may be a rose, but a charter is not a charter" and that this court "cannot take judicial notice of the St. Louis City Charter in effect in *Sanders*").

**3.** The district court also considered *Sanders* and decided that "there were some significant differences between the 1957 charter of the city of St. Louis and the current charter of the city of Springfield, Missouri." *Coday v. City of Springfield,* No. 89–3299–CV–S–4, Order at 1 (W.D.Mo. April 17, 1990). As an example, the district

court noted that the St. Louis charter in *Sanders* contained a provision which stated that the employees' titles and rates of pay were "permissive only" and not "mandatory." The district court observed that "there is no language in the Springfield charter that indicates that ranks or salaries of classified employees are permissive and subject to change." *Id.* at 2.

It is impossible, of course, to glean all of the similarities and differences between the two charters from the Missouri Supreme Court's opinion. We are certain, however, that the Missouri court's decision was *not* based on the fact that the St. Louis charter stated that ranks and salaries are "permissive only." According to our reading of *Sanders,* the "permissive only" language was quoted in a larger context, which addressed an argument advanced by the *employees.* The charter's "permissive only" language did not serve as a basis for the court's decision that the board of aldermen had a legislative authority to pass the ordinance.